Donald R. SMITH, Et Ux., Appellants,

v.

TECHNIBILT, INC., Appellee.

No. 9732.

Court of Appeals of Texas,
Texarkana.

May 22, 1990.
Rehearing Denied June 20, 1990.

Mark P. McMahon, Erskine, McMahon & Stroup, Longview, for appellants.

Bill Kuhn, Kuhn, Fishman, Jones & Walsh, Dallas, Bird Old, III, Mt. Pleasant, Kevin J. Keith, Bailey & Williams, Dallas, for appellee.

CORNELIUS, Chief Justice.

Donald R. Smith and Technibilt each appeal from a judgment favoring Smith against Technibilt in a products liability damage suit involving an allegedly defectively designed grocery shopping cart. Smith appeals because, among other things, his recovery was reduced by the percentage of causation attributed to the grocery store where Smith was injured; Technibilt appeals because it contends there is no or insufficient evidence to support the jury findings that the shopping cart was defectively designed and was a producing cause of Smith's injuries, and because of several alleged trial errors. We sustain the evidentiary points and will reverse and render a take-nothing judgment.

Donald Smith, M.D., and his wife filed suit against Dr. Mohammad Fazel, Skaggs Alpha Beta Grocery Company, and Technibilt, Inc. Dr. Fazel was sued for alleged negligent medical treatment, Skaggs for negligence, and Technibilt, which manufactured the shopping cart, on the basis of strict liability. The case against Dr. Fazel was severed from the remaining causes of action, Skaggs Alpha Beta settled, and the case against Technibilt went to trial.

Smith, a family medical practitioner in Morris County, was shopping in Skaggs Alpha Beta using one of Technibilt's over-the-counter (OTC) shopping carts. Skaggs was in the process of restocking its store using large stocking sleds or carts which partially blocked the aisles. While pushing his OTC shopping cart down the aisle between the stocking carts, Smith tripped and fell. No one witnessed the accident. Smith testified that he had no clear recollection of the event and that he lost consciousness as a result of his fall. When Skaggs employees arrived, they found Smith lying on the floor with an overturned OTC shopping cart nearby. Smith does not contend that he tripped on the shopping cart, but that the shopping cart was defectively designed because it did not support him or prevent his fall after he tripped on something else.

As the evidentiary challenges are dispositive of the appeal, we will consider them first.

Technibilt contends that there was no evidence or insufficient evidence to support the jury finding that the shopping cart was "unreasonably dangerous as designed." The charge given to the jury on this issue was explicitly approved in *Acord v. General Motors Corp.*, 669 S.W.2d 111 (Tex. 1984); *see also*, 3 *Pattern Jury Charges* § 71.02 (1982). The charge read as follows:

A "defectively designed" product is a product which is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

In considering the evidentiary challenges both as to defective design and causation, we follow well-settled standards of review. To determine if there is any evidence to support the finding, which is a legal sufficiency question, we review the evidence according to the standards of *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We review the factual sufficiency of the evidence under the standards set out in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). Thus, we will first examine the record for any probative evidence to support the finding, disregarding all contrary evidence. If we find some probative evidence, we will test the factual sufficiency of that evidence by examining the entire record.

There is no direct evidence of exactly how the accident occurred or what caused it. The only testimony on this question is that of Smith. He testified as follows:

And I was pushing the [shopping] cart down the aisle and I made a little turn to the right to get lined back up with the aisle and I tripped over something. I don't know whether it was a box or the [stocking] cart or whatever it was.

And I remember when I tripped I leaned forward and then after that it's kind of fuzzy.

But I remember I thought the [shopping] cart took off to the right, I couldn't swear, that was my recollection of it and the next thing I really remember I was laying in the floor....

....

... I remember catching my boot or pant or something on something and I didn't think I was going to fall, I just leaned forward and when I did the next thing I knew that I was kind of in the air spinning around and the next thing I remembered after that was cutting my shirt or jacket to take my blood pressure.

And I don't remember physically hitting the floor. I just remember, you know, coming as a great surprise to me when I fell.

Smith's expert, Dr. Greene, testified that he believed Technibilt's OTC shopping cart's stability was outside the range which he considered to be safe and that it was unreasonably dangerous in design for that reason. He said that the cart's center of gravity was thirty-two or thirty-three inches above the ground and that it took approximately fourteen pounds of lateral, horizontal force at the handlebar to cause an empty cart to tip over. He did not estimate the amount of pressure it would take to cause a "deep basket" cart, which he opined was a safer cart, to tip over in a similar demonstration. However, Technibilt's expert later performed the same experiment before the jury as described by Dr. Greene. His experiment confirmed Dr. Greene's findings as to the OTC cart used at Skaggs, but also proved that the deep basket cart preferred by Greene was more likely to tip over—requiring only eight to eight and a half pounds of lateral, horizontal force. He also said a deep basket cart was much more likely to "do a wheely" if

someone stood on the back wheels than would the OTC cart, which remained stable with 300 pounds of force being applied downward to its handlebars.

■ An examination of the record for some probative evidence to support the jury finding of a defective design, disregarding all contrary evidence and inferences, thus reveals some evidence to support the finding. However, examining the entire record, we find the evidence supporting a design defect factually insufficient.

The only testimony presented to the jury directly comparing the lateral stability of the two types of shopping carts indicates that the Technibilt OTC cart is more stable than the deep basket cart preferred by Dr. Greene. In addition, it will sustain a much heavier vertical force before tipping over than will the deep basket type. Although Dr. Greene theorized that the cart's stability would be affected if the front wheels locked for some reason, there is no evidence that such event occurred. Even if it could be considered reasonably foreseeable that a shopper, when falling, would attempt to support himself with an object designed to roll freely, the object can hardly be considered unreasonably dangerous when it does, in fact, roll. A wheeled object that is light enough to be moved around after being loaded with groceries, with a basket depth that will permit a normal person to load and unload it comfortably while remaining small enough to move down grocery store aisles, will necessarily have a certain degree of instability. We conclude that, considering the utility of the product and the risk of its intended use, there is factually insufficient evidence to support the finding that the cart was unreasonably dangerous as designed. Accordingly, in the exercise of our exclusive jurisdiction to review the factual sufficiency of the evidence, we sustain this point.

■ Technibilt next contends that there is no evidence or insufficient evidence to support a finding that any defect in the design of the shopping cart was a producing cause of the injury. Producing cause was defined for the jury as "an efficient, exciting or contributing cause, which, in a

natural sequence, produced the occurrence. There can be more than one producing cause."

An essential element of a strict liability cause of action is that the alleged defect in the product was a producing cause of the injuries. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729 (Tex.1984); J. Sales, *Product Liability Law in Texas* 222 (Houston Law Review 1985). There is no evidence in this case that the shopping cart caused Smith's fall. Indeed, he concedes that the cart did not cause his fall. His only contention is that the cart, by failing to remain stationary and support his falling weight, was a producing cause of his injury.

Smith's injury was caused by his tripping over some unidentified object in the grocery store aisle. There is no evidence that the shopping cart in any way contributed to the fall, and there is no testimony or claim that any of his injuries was caused by contact with the cart. When used for a purpose wholly outside its intended use, the cart simply failed to act as a safety net after the accident occurred. *See Colvin v. Red Steel Co.,* 682 S.W.2d 243 (Tex.1984); *Fitzgerald Marine Sales v. LeUnes,* 659 S.W.2d 917 (Tex.App.—Fort Worth 1983, writ dism'd).

It is not reasonably foreseeable that a shopping cart will be used as a safety net or restraint. To be effective at catching falling people, a shopping cart would have to remain stationary, which would wholly negate any usefulness for its intended purpose: to roll. Moreover, the accident which injured Smith would have occurred if the shopping cart had not been there at all. Therefore, there is no evidence that any design of the cart was in any way a producing cause of Smith's injuries.

Likewise, a "crashworthiness" claim that the cart failed to adequately protect Smith once he began falling cannot be sustained under the evidence. The shopping cart was not designed for or intended to be used as a vehicle or a support system for shoppers, nor are such uses normally incident to the intended use of the product. *See* J. Sales, *Product Liability Law In Texas* 40–42 (Houston Law Review 1985); *Restatement (Second) of Torts* § 402A comment h (1965).

In view of our disposition of these points, it is not necessary that we review Technibilt's remaining points or that we consider Smith's points on appeal. As there is no evidence that any defect in the product was a producing cause of Smith's injury, the judgment cannot be sustained. The judgment is therefore reversed, and judgment is here rendered that Smith take nothing against Technibilt.